# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Accurate Automation Corporation | )     ASBCA No. 59727 |
| | ) |
| Under Contract Nos. N00178-05-C-3049 | ) |
|                  N00024-07-C-4124 | ) |

APPEARANCE FOR THE APPELLANT:        Jerome S. Gabig, Esq.
                                               Wilmer & Lee, P.A.
                                               Huntsville, AL

APPEARANCES FOR THE GOVERNMENT:     E. Michael Chiaparas, Esq.
                                               DCMA Chief Trial Attorney
                                               Cara A. Wulf, Esq.
                                               Trial Attorney
                                               Defense Contract Management Agency
                                               Boston, MA

## OPINION BY ADMINISTRATIVE JUDGE THRASHER
## PURSUANT TO RULE 12.2

This appeal involves a government claim to recover $53,788 paid to Accurate Automation Corporation (AAC) for labor hours which were found to be unallowable by a Defense Contract Audit Agency (DCAA) audit of AAC's final indirect cost rate proposal for the contractor's fiscal year (CFY) 2007 (proposal). The government asserts the claimed unallowable costs were billed to and subsequently paid by the government but never paid by AAC to the employee, i.e., that AAC never incurred the costs. AAC asserts that the costs were deferred compensation paid to the employee in a later year by issuance of AAC stock. AAC elected to proceed under the Board's Expedited Procedure (Rule 12.2).[1] The parties elected to decide the appeal on the record pursuant to Board Rule 11.[2] Only entitlement is at issue. The Board has jurisdiction over the dispute pursuant to the Contract Disputes Act (CDA) of 1978, 41 U.S.C. §§ 7101-7109.

---

[1] The Contract Disputes Act, implemented by Board Rule 12.2, provides that this decision shall have no value as precedent, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside.

[2] The record consists of the Rule 4 file (tabs 1-29), exs. G-1 to -4, and ex. A-1.

## SUMMARY FINDINGS OF FACT

1. This appeal involves AAC's performance of two Navy (government) Small Business Innovation Research (SBIR) contracts during 2007: Contract No. N00178-05-C-3049, awarded on 11 April 2005 and Contract No. N00024-07-C-4124, awarded on 11 May 2007 (contracts). Both contracts were structured as cost-plus-fixed-fee (CPFF) contracts. (R4, tab 1 at G-1 to -6, tab 2 at G-44 to -46) Additionally, both contracts incorporated by reference Federal Acquisition Regulation (FAR) 52.216-7, ALLOWABLE COST AND PAYMENT (DEC 2002) (R4, tab 1 at G-23, tab 2 at G-62).

2. AAC is a closely held corporation involved in research and design related to robotics, unmanned systems and plasma research (R4, tab 3 at G-110). The president of AAC is Mr. Robert M. Pap (R4, tab 3 at G-114). On 20 November 2012 AAC submitted a revised,[3] certified, incurred cost proposal and related books and records for reimbursement of CFY 2007 incurred costs, which included payment of Mr. Pap's salary[4] (R4, tab 3 at G-87; ex. G-3, Ritchey decl. ¶ 11). On 25 February 2014, ACC submitted a revised proposal (final proposal) to correct various omissions in the 2012 submission (R4, tab 3 at G-84). The final proposal section requiring disclosure of the compensation of the five highest compensated AAC executives includes a column for disclosing accrual of deferred compensation. That section of the disclosure is blank, indicating no deferred compensation was paid to Mr. Pap during 2007. (R4, tab 19 at G-235)

3. DCAA's review of AAC's direct and indirect labor costs identified the wages paid AAC's executives to be a high risk area because a prior year audit (CFY 2005) had also identified management employees' wages claimed by AAC but that had not been paid to the employees (ex. G-1, Black decl. ¶¶ 3, 4). Mr. Pap responded to DCAA's draft audit of AAC's 2005 incurred cost proposal by a letter to DCAA and DCMA on 13 June 2008, addressing questions about unpaid wages akin to

---

[3] The record is unclear when AAC submitted its initial proposal. The final DCAA audit refers to its review of the "revised November 20, 2012" without reference to the initial proposal submittal (R4, tab 3 at G-84). However, the record indicates that in September 2011 DCAA informed the administrative contracting officer (ACO) that AAC had not yet submitted an adequate proposal (ex. G-3, Ritchey decl. ¶ 3).

[4] Appellant's brief correctly notes that Mr. Pap was a salaried employee, not a wage employee (app. br. at 12, 14; *see, e.g.,* R4, tab 19 at G-235). However, DCAA often refers to the labor hours claimed and reimbursed at issue in this appeal as "wages," as does Mr. Pap (*see, e.g.,* R4, tab 10 at G-195-96). The distinction does not substantively impact the decision in this appeal. Therefore, I will use the terms interchangeably.

2

those questioned in CFY 2007. Mr. Pap indicated there was no AAC deferred compensation plan in place during 2005, 2006 or 2007, stating in relevant part:

> First, but not necessarily foremost, is your characterization of the unpaid wages (and related fringe benefits) referred to in your report as "***Deferred Compensation***". In virtually every definition I can find, deferred compensation refers to a ***plan*** for ***awarding*** employees. "Deferred compensation is an arrangement in which a portion of an employee's income is paid out at a date after which that income is actually earned. Examples of deferred compensation include pensions, retirement plans, and stock options. The primary benefit of most deferred compensation is the deferral of tax." There can be no question that the accrual (but not payment) of the subject wages was not done under a "plan" and the employees were not being awarded anything. They would have gladly taken the payment if the company could have afforded the cash to pay them.
>
> ....
>
> For the above reasons, I believe no adjustments should be made to the 2005 cost report as originally submitted. Additionally, the same situation exists in the 2006 and 2007 cost reports for the same reason—wages were accrued for individuals performing labor on contracts and those wages have not yet been paid because of lack of funds with which to pay them.

(R4, tab 10 at G-195-96) (emphasis in original)

4. A review of AAC's CFY 2007 records also identified claimed labor cost hours that appeared to have been worked by Mr. Pap but were not paid by AAC (R4, tab 3 at G-88). As a result, DCAA requested that AAC provide proof of payment (R4, tab 17 at G-212).

5. AAC (Mr. Pap) made several responses to DCAA's request for proof. First, at a conference held on 21 January 2014, Mr. Pap confirmed there was no proof of payment because AAC had not yet paid him (R4, tab 13 at G-204). On 20 February 2014, during a phone call where the unpaid wage issue was discussed, Mr. Pap informed DCAA that the wages had been paid because the IRS required him to pay the wages and that he had proof of payment (ex. G-1, Black decl. ¶ 5). On 11 March

3

2014, in a meeting with DCAA and DCMA where the issue of unpaid wages was discussed, Mr. Pap again referenced an Internal Revenue Service (IRS) audit and stated that the IRS had required him to pay himself and that he had proof of such. DCAA requested documentation of proof of anything that would support his statement that the liability had been liquidated. (R4, tab 21 at G-241; ex. G-1, Black decl. ¶ 6, ex. G-2, Lynam decl. ¶ 7)

6. During the 11 March 2014 meeting, Mr. Pap, for the first time, stated that he had been reimbursed for his work by receiving stock in lieu of salary and that he would provide DCAA with proof of such payment (ex. G-1, Black decl. ¶ 6, ex. G-2, Lynam decl. ¶ 6). DCAA received the promised supporting documentation of payment by email on 4 April 2014 which stated "[a]ttached [are] the stocks certificates provided in lieu of pay in 2007 for the two employees as well as the IRS documents for 2007" (R4, tab 23 at G-278; ex. G-1, Black decl. ¶ 12).[5] Pertinent to this appeal, there were four AAC stock certificates attached (numbered certificates C-3, C-4, C-5, C-6); three issued to Mr. Pap (C-4, C-5, and C-6) and one issued to Mrs. Pap (C-3). The face of the certificates includes a place for the date of issuance and three of the certificates were dated 16 December 2002 (C-3, C-4, and C-5). However, a certificate issuing 20,000 shares to Mr. Pap was undated (C-6). (R4, tab 23 at G-280-83) Also attached was a document indicating Mrs. Pap transferred 2,501,000 shares to Mr. Pap on 6 November 2008 (R4, tab 23 at G-284).

7. AAC's responses did not persuade DCAA and, on 27 May 2014, DCAA issued a Form 1 informing AAC that $53,788 of its claimed CFY 2007 incurred costs ($20,430 in wages, $22,398 in associated overhead expenses and $10,960 of G&A expenses) was found to be unallowable, per FAR 52.216-7, because these costs were billed to and subsequently paid by the government but never paid to Mr. Pap (R4, tab 3 at G-118-19).[6]

---

[5] The IRS documentation consisted of documents from the IRS to Mr. Pap, but did not include cancelled checks or bank statements to show amounts drafted from AAC's accounts to pay Mr. Pap. DCAA concluded that the IRS documents provided were not adequate support for Mr. Pap's assertion that the wages had been paid. (R4, tab 21 at G-241; ex. G-1 Black decl. ¶ 6, ex. G-2, Lynam decl. ¶ 7)

[6] The DCAA audit actually reviewed three AAC contracts questioning $95,863 in direct labor costs that were not paid. However, $75,433 of the questioned costs was related to Contract No. N00039-01-C-2206 which was closed by the time of the audit (R4, tab 3 at G-118). This appeal only addresses questioned costs related to other two contracts, Contract No. N00178-05-C-3049 and Contract No. N00024-07-C-4124.

4

8. AAC responded to the DCAA Form 1 by letter on 5 June 2014 through its legal counsel stating "there is nothing in FAR § 52.216-7 which requires an incurred cost to be liquidated," and "Mr. Pap's deferred compensation has been liquidated" through AAC stock issued to Mr. Pap (R4, tab 5 at 4). Attached to the letter from AAC's counsel was a sworn declaration by Mr. Pap stating, among other things, that as president of AAC he made the decision not to pay himself the $20,430 so that AAC could pay suppliers and non-officer employees by electing to take the wages as deferred compensation on a later date. He also stated that he was later compensated by the company on or about July 2008 by AAC issuing him 20,000 shares of AAC stock. (*Id.* at 7) Also attached, in support of Mr. Pap's declaration, was the same stock certificate submitted earlier on 4 April 2014, the undated stock certificate (C-6) indicating transfer of 20,000 shares of AAC stock to Mr. Pap (*id.* at 8).

*Final DCAA Audit*

9. DCAA issued its final report, DCAA Audit Report, No. 1211-2007A10100001, dated 12 June 2014, (audit report) recommending the government disallow the questioned costs (R4, tab 3 at G-84). The audit repeated its initial finding that the labor costs found to be unallowable were claimed by and reimbursed to AAC but not paid (incurred) by AAC during CFY 2007 in violation of FAR 52.216-7 (*id.* at G-89-90). In addition, DCAA's audit of AAC's books and records failed to disclose any journal entries in the books and records indicating a deferred compensation plan was in place during CFY 2007 (*id.* at G-88-90). Likewise, DCAA's audit of AAC's books and records failed to disclose any journal entries in the books and records at the time of the alleged debt liquidation as would be expected if the wages were liquidated by stock issuance (*id.* at G-89).

10. On 8 September 2014, the contracting officer issued a final decision (COFD) demanding payment in the amount of $53,788 based upon the finding in the audit report (R4, tab 4). AAC appealed the COFD and elected the Board's Expedited Procedure (Rule 12.2) on 20 November 2014.[7] The parties waived a hearing and elected to submit the appeal on the record under Board Rule 11 on 26 January 2015 (Bd. corr. ltr. dtd. 26 January 2015).

---

[7] The effective date of the Rule 12.2 election was 10 December 2014, since the notice of appeal was misdirected by the USPS such that the Board received it on 8 December and the election was stayed for two days to resolve a procedural matter.

11. AAC submitted a second declaration on 19 March 2015 that stated in pertinent part:

> Rather than have Accurate Automation perish from insolvency, in those years when Accurate Automation was not cash flow positive, I took deferred compensation. Although I cannot be more specific about the exact date that Mr. Bailey (representing Accurate Automation) and myself entered into the deferred compensation agreement, it happened long before 2007.

(Ex. A-1, Pap decl. ¶ 3)

## DECISION

This appeal results from Mr. Pap's decision to forego a portion of his compensation for hours he worked during CFY 2007. There is no dispute Mr. Pap worked the hours or that he was not paid in CFY 2007 for the work. However, the parties differ over whether Mr. Pap was ever paid (i.e., after CFY 2007) for these hours and, if he was, whether the form of compensation meets the requirements of FAR 52.216-7. The government asserts Mr. Pap was never paid for the hours in question despite the fact AAC billed the government under the contract and was reimbursed for the hours. This, the government argues, violates the provisions of FAR 52.216-7 rendering the cost of these hours unallowable for reimbursement under the contract (gov't br. at 9-11). In contrast, appellant asserts Mr. Pap was reimbursed for these hours in 2008 by the issuance of shares of AAC stock as deferred compensation (app. br. at 18-19) This, appellant argues, meets the requirements of FAR 52.216-7(b)(1)(i) because it is an "other form of actual payment" and FAR 52.216-7(b)(1)(ii) because it authorizes reimbursement when there are labor "costs incurred, but not necessarily paid, for" as in this case were incurred in the form of a deferred compensation plan (app. br. at 18-19, 24).

FAR 31.205-6, COMPENSATION FOR PERSONAL SERVICES, addresses the allowability of deferred compensation plans at subparagraph (k) and requires that the plan exist (be awarded) prior to or during the accounting period during which the work is performed. FAR 31.205-6(k)(2). Appellant makes several arguments why these costs are allowable because there was a deferred compensation agreement in place in CFY 2007 and the debt under that agreement was liquidated in 2008 by the issuance of stock. This, appellant argues, satisfies the requirements of FAR 52.216-7 and FAR 31.205-6 (app. br. at 18-35). I have reviewed and considered appellant's arguments and find them unpersuasive; appellant has failed to meet its burden of proof that such a plan was in place before or during CFY 2007 or that the issuance of stock evidences liquidation of AAC's debt to Mr. Pap. Appellant's only evidence of such a

6

plan are two sworn declarations submitted by appellant after the fact and an undated stock certificate. The two declarations, taken together, assert Mr. Pap entered into a deferred compensation plan by a verbal agreement with AAC (through its deceased chief financial officer, Mr. Bailey)[8] sometime prior to 2007 and these specific hours at issue were reimbursed under that plan in July 2008 by the issuance of 20,000 shares of AAC stock (findings 8, 11). The only evidence proffered in support of its declaration regarding the liquidation of the debt is an AAC stock certificate that reflects issuance of 20,000 shares of AAC stock to Mr. Pap (*id.*). However, the stock certificate is undated and does not indicate on the face of the document why it was issued (findings 6, 8). Likewise, there is no other evidence that indicates the date of the stock issue or connects the proposed certificate with liquidation of AAC's debt to Mr. Pap.

In addition, the record is devoid of any contemporaneous evidence of a deferred compensation plan existing prior to or during CFY 2007. The DCAA auditors failed to find any indication that such a plan existed in AAC's books and records and appellant has not identified any such references. Additionally, AAC's final proposal, submitted in 2014, included a section requiring AAC to disclose the compensation of its five highest paid executives. AAC did not identify in that section that any deferred compensation was awarded to Mr. Pap; the deferred compensation column is blank. (Findings 2, 9) Likewise, DCAA's review of AAC's books and records failed to disclose any journal entries in the books and records at the time of the asserted debt liquidation (issuance of the stock) that the debt was liquidated (finding 9). If such a plan existed in 2007, even if verbal, and was liquidated in 2008, I would expect some reference to it to be included in appellant's final proposal and recorded somewhere in appellant's books and records.

Furthermore, Mr. Pap's own statements contradict his declarations. DCAA noted and raised this same issue as a result of their review of AAC's 2005 cost proposal. Mr. Pap responded by letter in June 2008 specifically addressing the existence of a deferred compensation plan and unequivocally stated there was no deferred compensation plan in place in 2005, 2006 or 2007 (finding 3). When DCAA provided him an opportunity to provide proof of payment of the costs questioned for the same reasons in AAC's CFY 2007 proposal, his first response in January 2014 was that he had not been paid yet (finding 5). Appellant would now have us believe, contrary to his prior statements, that a plan did exist in 2007 and he was paid in 2008. I do not find this credible.

*Forgiveness of Indebtedness and Forfeiture*

Appellant argues in the alternative, the logical reason that there is no record of liquidation of the debt in AAC's books, if there was no deferred compensation, is

---

[8] Appellant states that Mr. Bailey died in July 2011 (app. br. at 2).

because the debt was liquidated by forgiveness of the debt. If the debt was forgiven, the costs would comply with FAR 52.216-7 and, thus, be allowable (app. br. at 35-36). Appellant fails to identify any evidence to support this hypothesis and I fail to find any in the record. Appellant also argues that to find these costs unallowable and require AAC to return the money it received would constitute forfeiture because the government has not been prejudiced (app. br. at 36-41). I disagree, the government has been prejudiced by AAC billing and being reimbursed for costs it did not incur. Consequently, I fail to find any basis that a ruling against appellant in this appeal would result in forfeiture.

## CONCLUSION

For the reasons stated, this appeal is denied.

Dated: 6 April 2015

JOHN J. THRASHER
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59727, Appeal of Accurate Automation Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8